IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MELISSA DANIELSON, et al., on behalf of themselves and all others similarly situated, | |
| **Plaintiffs,** | |
| v. | 1:05-cv-2091-WSD |
| DBM, Inc., HOME DEPOT U.S.A., INC., and JOHN DOES 1 through 100, | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on Defendant Home Depot U.S.A., Inc.'s ("Home Depot") Motion to Dismiss [14] and Defendant DBM, Inc.'s ("DBM") Motion to Dismiss [15].

## I.   FACTUAL BACKGROUND

This is a purported class action arising from Plaintiffs' alleged purchase of rosewood flooring imported and supplied by DBM and sold to Plaintiffs by Home Depot.[1]  Plaintiffs allege that wood flooring they purchased at Home Depot, which

---

[1]  Plaintiffs also assert their claims against 100 John Doe defendants. (Compl., at ¶¶ 7-10.)  "[F]ictitious party practice is not permitted in federal court." New v. Sports & Rec., 114 F.3d 1092, 1094 n.1 (11th Cir. 1997); see also Lewis v.

was marketed and sold to Plaintiffs as real Rosewood, was not actually Rosewood as warranted, but was "different and inferior types of wood commonly known as Pradu, Makha and Deng." (Compl. [1], at ¶ 23.) Plaintiffs claim that Defendants knew that the wood was not real Rosewood, yet intentionally misrepresented the quality of the wood to increase sales. Plaintiffs assert claims for violation of the federal Racketeer Influenced and Corrupt Organization Act provisions of the Organized Crime Control Act of 1970 ("RICO"), Georgia Fair Business Practices Act ("FBPA"), Uniform Deceptive Trade Practices Act ("UDTPA"), breach of warranty, fraud, and breach of contract. Home Depot moves for dismissal of Plaintiffs' RICO claim (Count I), FBPA claim (Count II), UDTPA claim (Count III), and common law fraud claim (Count IV). Defendant DBM moves to dismiss

---

City of Montgomery, No. 2:04-CV-858-WKW, 2006 WL 1761673, at *2 (M.D. Ala. June 27, 2006) ("In general, 'fictitious-party pleading is not permitted in federal court.'") While courts have sometimes made exceptions when the plaintiff may be able to describe an individual (e.g., the driver of an automobile) without stating his name precisely or correctly, the unspecific description of the John Doe defendants in this case does not fall under this exception. Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992) (finding plaintiff's description of "Chief Deputy of the Jefferson County Jail John Doe" sufficient because the proposed defendant existed and plaintiff adequately described the person to be sued so that the person could be identified for service). Defendants John Does 1-100 are therefore dismissed. If Plaintiffs wish to name an identifiable defendant, they may seek leave from the Court to amend the Complaint.

Plaintiffs' RICO claim and, once dismissed, urges the Court not to exercise its

supplemental jurisdiction over the remaining state law claims.

## II.     DISCUSSION

### A.     Standard on Motion to Dismiss

The law in this Circuit governing motions to dismiss pursuant to Rule

12(b)(6) for failure to state a claim is well settled.  Dismissal of a complaint is

appropriate only when, on the basis of a dispositive issue of law, no construction of

the factual allegations will support the cause of action.  Marshall County Bd. of

Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

"Although a plaintiff is not held to a very high standard in a motion to dismiss for

failure to state a claim, some minimal pleading standard does exist."  Wagner v.

Daewoo Heavy Indus. Am. Corp., 289 F.3d 1268, 1270 (11th Cir.), *rev'd on other*

*grounds*, 314 F.3d 541 (11th Cir. 2002) (en banc).  "To survive a motion to

dismiss, plaintiffs must do more than merely state legal conclusions; they are

required to allege some specific factual bases for those conclusions or face

dismissal of their claims."  Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263

(11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or

legal conclusions masquerading as facts will not prevent dismissal.") (citations

omitted).  Applying these principles, the Court will address Defendants' arguments

in favor of dismissal.

      B.    <u>Plaintiffs' RICO Claim</u>

Home Depot and DBM both move to dismiss Plaintiffs' RICO claim.

Plaintiffs allege that Defendants engaged in a scheme to defraud Plaintiffs and

committed the predicate offenses of wire and mail fraud, deceptive trade practices

and breach of warranty.  This, Plaintiffs allege, constitutes a pattern of racketeering

in violation of RICO.  Defendants argue that Plaintiffs' RICO claim fails to

sufficiently allege the existence of an enterprise, the first element of a RICO claim.

Defendants also argue that Plaintiffs do not adequately allege that the required

predicate acts were the cause of Plaintiffs' injuries as required by RICO.

RICO Section 1962(c) provides "[i]t shall be unlawful for any person

employed by or associated with any enterprise engaged in, or the activities of

which affect, interstate or foreign commerce, to conduct or participate, directly or

indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  A civil

RICO claim under § 1962(c) requires five elements to be met:  (1) the existence of

an enterprise; (2) that the enterprise affected interstate commerce; (3) that the

-4-

defendant was employed by or associated with the enterprise; (4) that the defendant

participated, either directly or indirectly, in the conduct of the affairs of the

enterprise; and (5) that the defendant participated through a pattern of racketeering

activity.  United States v. Starrett, 55 F.3d 1525, 1541 (11th Cir.1995).  RICO

defines the term "pattern of racketeering activity" as requiring the commission of

at least two acts defined as predicate racketeering offenses by the statutes stated in

the Act.  See 18 U.S.C. § 1961(5).  In this case, Plaintiffs base their RICO claims

on the predicate racketeering offenses of mail fraud and wire fraud, alleging that

Defendants "utiliz[ed] the US Mail, telephone wires and the Internet in furtherance

of their scheme to defraud [Plaintiffs]."  (Compl., at ¶¶ 28.)      *1.    The*

*Existence of*

*an*

*Enterprise*

Defendants argue that Plaintiffs fail to sufficiently allege the existence of an

enterprise, and therefore their RICO claim fails.  (Home Depot Mot. to Dismiss, at

10.)  "[A] RICO enterprise exists where a group of persons associates, formally or

informally, with the purpose of conducting illegal activity."  United States v.

Hewes, 729 F.2d 1302, 1311 (11th Cir. 1984).  "[T]he definitive factor in

determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is the pattern of racketeering activity requisite to the RICO violation." United States v. Goldin Indus., Inc., 219 F.3d 1271, 1275 (11th Cir. 2000). The Eleventh Circuit has held that "the existence of an enterprise is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. Id. "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved . . . ." United States. v. Turkette, 452 U.S. 576, 583 (1981).

Plaintiffs address the existence of an enterprise in three paragraphs of their Complaint. Specifically, Plaintiffs allege that "[t]hrough their pattern of racketeering activity and proceeds and income derived therefrom, Defendants . . . have participated as principals in an enterprise . . . ." and "[t]hrough their pattern of racketeering activity or proceeds derived therefrom, Defendants have engaged in the conduct of an enterprise . . . ."(Compl., at ¶¶ 29, 31.) Plaintiffs also allege that "[f]unds from Defendants' enterprise and racketeering activities were used or

invested to cause further injury to Plaintiffs . . . ."  (Compl., at ¶ 34.)  Noticeably, Plaintiffs link the existence of an enterprise to the racketeering activity and claim that *through their pattern of racketeering activity,* Defendants participated in an enterprise.  That is, an enterprise exists solely as a result of Defendants' alleged racketeering activity–mail and wire fraud.  Plaintiffs do not allege facts showing an enterprise existed "separate and apart from the pattern of activity in which it engages."  The allegations of the Complaint show only a business relationship between a supplier and retailer.  Plaintiffs' thin allegations simply reciting language from the RICO statute are not sufficient to allege the existence of an enterprise and thus are insufficient to plead a RICO violation.

  2.  *Racketeering Activity as the Cause of Plaintiffs' Injuries*

  Even if an enterprise had been sufficiently alleged here, Plaintiffs' RICO claim fails for a second reason.  Plaintiffs do not allege that Defendants' racketeering acts caused their injuries.  "In addition to proving racketeering activity, a civil RICO plaintiff must show that the racketeering activity caused him to suffer an injury."  <u>Green Leaf Nursery v. E.I. Dupont De Nemours & Co.</u>, 341 F.3d 1292, 1307 (11th Cir. 2003); <u>Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.</u>, 140 F.3d 898, 906 (11th Cir. 1998) ("This Court has interpreted

that provision to include a requirement that the party's injuries be the direct result of the alleged racketeering activity.").  "In order for a pattern of racketeering activity to be a cognizable cause of civil RICO injury to a private plaintiff, one or more of the predicate acts must not only be the 'but for' cause of the injury, but the proximate cause as well . . . Plaintiffs must show a 'direct relation between the injury asserted and the injurious conduct alleged.'" Green Leaf Nursery, 341 F.3d at 1307.  The only "racketeering acts" as defined by the RICO statute alleged by Plaintiff here are mail fraud and wire fraud.  18 U.S.C. § 1961(1).  To state a cognizable claim under RICO, Plaintiffs must allege that their injury was a direct result of Defendants' mail and wire fraud.

Plaintiffs do not allege that they ever received any mailing, flyer, letter, phone call, e-mail or Internet ad, or other mail or wire communication from Defendants.  The Complaint appears to allege that the sale of the "Rosewood" flooring–not mail or wire fraud–caused the Plaintiffs' injuries.  There is no allegation that any or all of the Plaintiffs relied on a mail or wire communication in making the purchases they allege.  The closest reference the Court could find to an allegation of mail or wire fraud in the Complaint is the statement that "[a]s reflected on the DBM website . . . the company advertised and represented to

-8-

consumers and customers that it sold, supplied and installed 'Rosewood' flooring."
(Compl., at ¶ 19.)  This allegation appears to be offered as evidence of DBM's
misrepresentations regarding the quality of the wood.  Plaintiffs do not, however,
allege that the website advertisement constitutes mail or wire fraud as defined by
statute, that the advertisement was considered by Plaintiffs in connection with any
purchase, or that it otherwise caused Plaintiffs' injuries. Plaintiffs state in their
Complaint that they have "incurred damages due to the Defendants' sale of
'Rosewood' flooring . . .," "deceptive trade practices and violations of express and
implied warranties and other racketeering activities were the proximate cause of
Plaintiffs' injuries," and "[a]s a result of hundreds of predicate offenses of
deceiving and defrauding . . . Plaintiffs . . . have suffered monetary damages."
(Compl., at ¶ 26, 33, 36.)  These broad and unspecific statements do not
sufficiently allege that mail and wire fraud actually caused Plaintiffs' injuries.

  Plaintiffs point to paragraphs 26 and 28 of the Complaint in a strained
attempt to show they have alleged a direct relationship between the alleged
racketeering activities and their injuries.  Plaintiffs allege "[a]s a result of
Defendants' acts, omissions, negligence and breach of contract and warranties,
Plaintiffs . . . have been defrauded and have incurred damages due to the

Defendants' sale of "Rosewood" flooring purchased by Plaintiffs."  (Compl., at ¶ 26.)  Plaintiffs also allege "[t]hrough their scheme to defraud Plaintiffs . . . by their defrauding of Plaintiffs . . . by violating multiple warranties to Plaintiffs . . . and by committing the predicate offenses of utilizing the U.S. Mail, telephone wires and the Internet in furtherance of their scheme to defraud Plaintiff . . . Defendants have engaged in a pattern of racketeering activity."  (Compl., at ¶ 28.)  These summary allegations do not state that wire fraud or mail fraud directly caused Plaintiffs' injuries.

A critical review of the Complaint discloses that Plaintiffs have failed completely to allege how Defendants engaged in wire or mail fraud.  The Court cannot engage in speculation and conjecture to fill this pleading void.  See Friedlander v. Nims, 571 F. Supp. 1188, 1194-95 (N.D. Ga. 1983) (dismissing RICO claim where the "Court is left to guess how [plaintiff's complaint] states a RICO claim.  The complaint nowhere states that [defendant] had any part in mailing or communicating anything by wire, except by saying the defendants did so").  Plaintiffs have not alleged that Defendants directly caused their injury using any mail or wire communication, and the Complaint fails to meet this requirement

for a cognizable RICO claim.  Plaintiffs' pleading failure requires the RICO claim

to be dismissed.[2]

      C.    <u>Plaintiff's Fair Business Practices Act Claim (Count II) and Uniform Deceptive Trade Practices Claim (Count III)</u>

Home Depot argues that Plaintiffs' FBPA claim should be dismissed

because Plaintiffs fail to allege that they sent the pre-suit demand required under

the statute and because a class action may not be brought under the FBPA.  (Home

Depot Mot. to Dismiss, at 19.)  It also moves to dismiss the UDTPA claim, arguing

---

    [2] Defendant DBM argues in its Motion to Dismiss that if the Court dismisses Plaintiffs' RICO claim, it should decline to exercise supplemental jurisdiction over the remaining state law claims.  (DBM Mot. to Dismiss, at 17.)  Plaintiffs, however, allege facts giving rise to jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA").  28 U.S.C. § 1332(d).  "CAFA's language favors federal jurisdiction over class actions . . . ."  <u>Evans v. Walter Indus., Inc.</u>, 449 F.3d 1159, 1163 (11th Cir. 2006).  CAFA creates diversity jurisdiction for a class action if the claims, in the aggregate, exceed $5 million, and any defendant is diverse from any class member.  28 U.S.C. § 1332(d)(2), (6).  First, Plaintiffs seek a national class of all purchasers of the rosewood wood flooring and seeks general and compensatory damages, including punitive damages.  The amount in controversy requirement, from the face of the Complaint, appears to be met, and no party has argued that the amount in controversy under CAFA is not met in this case.  Second, Plaintiffs' putative class includes customers who purchased wood flooring at "Home Depot stores throughout the United States."  Home Depot is incorporated in Delaware and has its principal place of business in Georgia.  DBM is a Georgia corporation with its principal place of business in Georgia.  Therefore numerous members of the alleged class inevitably are citizens of a state different from Home Depot or DBM.  Jurisdiction in this Court appears proper under CAFA at this time.

the UDTPA only provides injunctive relief, and a dispute regarding the quality of wood does not establish any right to injunctive relief.  (Id. at 20.)  Plaintiffs do not respond to Defendants' arguments in their Opposition.          Failure to respond to an opposing party's arguments regarding a claim constitutes an abandonment of that claim and warrants the dismissal of the claims of the opposing party.  Bute v. Schuller Int'l, Inc., 998 F. Supp. 1473, 1477 (N.D.Ga. 1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."); Welch v. Delta Air Lines, Inc., 978 F. Supp. 1133, 1137 (N.D.Ga. 1997) ("Plaintiff's failure to respond to Defendant's argument alone entitles Defendant to summary judgment on these claims.").  Because Plaintiffs abandon their claims under the FBPA and UDTPA, they are required to be dismissed.

D.    Plaintiffs' Fraud Claim (Count IV)

Defendants argue that Plaintiffs' fraud claim should be dismissed for failure to plead the elements of fraud with particularity as required by the Federal Rules.[3]

_____

[3] Defendants also argue that Plaintiffs do not plead the predicate acts of mail and wire fraud under RICO with particularity.  (Home Depot Mot. to Dismiss, at 14.)  The Court dismissed Plaintiffs' RICO claim for failure to state a claim, therefore it is not necessary for the Court to consider whether the predicate acts of mail and wire fraud were pled with sufficient particularity.

"In Georgia, the common law tort of fraud requires five elements:  (1) false

representation by defendant; (2) with scienter, or knowledge of falsity; (3) with

intent to deceive plaintiff or to induce plaintiff into acting or refraining from

acting; (4) on which plaintiff justifiably relied; (5) with proximate cause of

damages to plaintiff."  Worsham v. Provident Cos., Inc., 249 F. Supp. 2d 1325,

1331 (N.D. Ga. 2002); see also Ledford v. Smith, 618 S.E.2d 627, 634 (Ga. Ct.

App. 2005).

To survive a motion to dismiss, allegations of fraud must satisfy the

requirements of Federal Rule of Civil Procedure 9(b).  Rule 9(b), which is

captioned "Pleading Special Matters," requires: "In all averments of fraud of

mistake, the circumstances constituting fraud or mistake shall be stated with

particularity."  Fed. R. Civ. P. 9(b); see also United States v. Lab. Corp. of Am.

Inc., 290 F.3d 1301, 1310 (11th Cir. 2002).  "The notion [of the Rule] is that a

heightened pleading requirement imparts a note of seriousness and encourages a

greater degree of pre-institution investigation by the plaintiff."  5A Charles Alan

Wright & Arthur R. Miller, Federal Practice and Procedure § 1296, at 31 (3d. ed.

2004).  The Rule therefore requires Plaintiffs to plead "such matters as the time,

place and contents of false representations, as well as the identity of the person

-13-

making the misrepresentation and what was obtained or given up thereby.

[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive

are not sufficient to satisfy the rule." <u>Parnes v. Gateway 2000, Inc.</u>, 122 F.3d 539,

549-50 (8th Cir. 1997) (dismissing complaint because plaintiffs' allegation of fraud

"is simply not particularized") (quotations and citations omitted).  Essentially, Rule

9(b) requires plaintiffs in a fraud case to specify the who, what, where, when, why

and how of the alleged fraud.  <u>In re World Access, Inc.</u>, 119 F. Supp. 2d 1348,

1353 (N.D. Ga. 2000).

     Plaintiffs allege Home Depot and DBM falsely represented to Plaintiffs that

the wood flooring sold to consumers was authentic Rosewood, when it was

actually wood of inferior quality.  (Compl., at ¶¶ 59-61.)  Plaintiffs vaguely allege

these misrepresentations were made with the purpose of inducing consumers to

buy the wood and increasing sales, and the misrepresentations occurred when

Plaintiffs purchased the wood flooring at the Home Depot stores.  (Compl., at ¶

61.).  Plaintiffs also allege that DBM made misrepresentations on its website and

on the samples provided to Home Depot which Home Depot displayed to

customers.  (Compl., at ¶¶ 19, 22.)  These allegations suggest that what occurred

may be actionable.  The law, however, imposes heightened pleading requirements

on a party who seeks to allege fraud, and those requirements have not been met here.  See HLD Enters, Inc. v. Michelin N. Am., Inc., No. Civ.A.1:03 CV 2558 T, 2004 WL 2095739, at * 5 (N.D. Ga. June 29, 2004); see also Lab. Corp. of Am., 290 F.3d at 1310.  "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior."  Lab. Corp., 290 F.3d at 1310.  Here, what is required is notice to the Defendants of exactly what was represented, by whom, when and where the representations took place, why and how the alleged fraud was committed, and what result occurred.  While Plaintiffs' allegations suggest fraud, they are not sufficient to alert the Defendants to the misconduct with which Plaintiffs seek to charge them.[4]   Plaintiffs simply have failed to allege fraud with sufficient particularity, and Defendants' Motion to Dismiss the fraud claim is granted.

---

[4]  That Plaintiffs have named 100 John Doe defendants in this action is an implied acknowledgment that they have not alleged who represented what to whom, how, when, and where.  (Compl., at ¶¶ 7-10.)

E.   <u>Plaintiffs' Claim for Punitive Damages (Count IX)</u>

"Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  O.C.G.A. § 51-12-5.1(b).  While punitive damages are available for fraud claims, the Court dismissed Plaintiffs' fraud claim for failure to satisfy Rule 9(b).  There is no claim remaining in the case to support a claim for punitive damages.  Defendants' Motion to Dismiss Plaintiffs' claim for punitive damages is therefore granted.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Home Depot's Motion to Dismiss [14] is **GRANTED.**  Defendant DBM's Motion to Dismiss [15] is **GRANTED**.

**SO ORDERED** this 31st day of July, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE